# UNITED STATES COURT OF APPEALS
## FOR THE EIGHTH CIRCUIT

DAVID A. STEBBINS                                              PLAINTIFF

VS.                              CASE NO. 13-2687

RITA STEBBINS
DAVID D. STEBBINS                                             DEFENDANT

## APPELLANT BRIEFING

Comes now, *pro se* Appellant David Stebbins, who hereby submits the following

Appellant Briefing in support of his appeal.

| **Section** | **Page(s)** |
|---|---|
| 1. TABLE OF CONTENTS | 1 |
| 2. TABLE OF AUTHORITIES | 3 |
| 3. JURISDICTIONAL STATEMENT | 5 |
| (a) Basis for District Court's Jurisdiction. | 5 |
| (b) Basis for Court of Appeals' Jurisdiction. | 5 |
| (c) Timeliness of appeal | 5 |
| (d) Finality of judgment | 5 |
| 4. STATEMENT OF ISSUES | 7 |
| 5. STATEMENT OF THE CASE | 8 |
| 6. SUMMARY OF ARGUMENT | 9 |
| 7. ARGUMENT | 11 |
| (a) Appellant's lawsuit filings are protected by the First Amendment. | 11 |
| (b) Strict scrutiny demands that Appellant's court access onlyb e prospectively restr- icted upon full due process, including trial | 13 |

by jury of his peers.

(c) The District Court's finding that Appellant's     15
lawsuit-filings were vexatious and abusive
is in clear error.

(d) Appellant always tries to consult with legal     17
counsel before filing a suit.

(e) Appellant only sues when he has been wronged.     18
If said wrong is rectified without litigation,
Appellant will not sue.

(f) The right to file lawsuits is the only way     18
Appellant can protect himself without
having to resort to violence.

(g) Precedent used by the District Court is     19
far more severe than anything Appellant has
even arguably done.

(h) Even if restrictions are appropriate, the     25
restrictions given are far too harsh and
have the disparate impact of depriving
Appellant of court access altogether.

(i) The District Court is effectively demand-     26
ing that Appellant be perfect from now on.

(j) The District Court's exception for when     27
Appellant is represented by counsel is
unlawful as well.

(k) The District Court should not have dis-     28
missed the action with prejudice when
Appellant's mistake was simply calling
the cause of action something different
from what it actually was.

(l) The District Court had jurisdiction over     29
this claim because it is an intellectual
property dispute.

8. STANDARD OF REVIEW     34

9. CONCLUSION     35

# TABLE OF AUTHORITIES

**Statutes & Rules**                                                   **Page(s)**

28 USC § 1331                                                          5

28 USC § 1291                                                          5

28 USC § 1654                                                          27

28 USC § 1915                                                          7,13

28 USC § 1915(a)(3)                                                    26,27

**Legal treatises**                                                    **Page(s)**

http://evans-legal.com/dan/tpfaq.html#purpose                         29

**Case Law**                                                           **Page(s)**

*Bill Johnson's Rests., Inc. v. NLRB*,                                 12
461 U.S. 731, 741 (1983)

*California Motor Transp. Co. v.*                                      12
*Trucking Unlimited*, 404 U.S. 508, 510 (1972)

*Crain v. CIR*, 737 F. 2d 1417, 1418 (5th Cir. 1984)                  12

*Day v. Day*, 510 U.S. 1 (1993)                                       19,21

*Haines v. Kerner*, 404 U.S. 519 (1972)                              29,30

*in re McDonald*, 489 U.S. 180 (1989)                                19,20

*In re Tyler*, 839 F.2d 1290 (8th Cir. 1988).                       19,22,24,25

*Knieriem v. Group Health Plan, Inc.*,                                29
434 F. 3d 1058, 1060 (8th Cir. 2006)

*Kolstad v. American Dental Assn.*,                                   16
527 US 526 (1999)

*Korematsu v. United States*,                                        24
323 U.S. 214 (1944)

Appellate Case: 13-2687     Page: 3     Date Filed: 10/11/2013 Entry ID: 4085088

*Martin v. District of Columbia Court of Appeals*, 506 U.S. 1, 2 (1992),    19,21

*McDonald v. Smith,* 472 U.S. 479, 484 (1985)    12

*Miller v. Johnson*, 115 S.Ct. 2475, 2490 (1995)    13

*Monsky v. Moraghan*, 127 F.3d 243, 246 (2d Cir.1997)    12

*Neitzke v. Williams*, 490 US 319 (1989)    11,13

*O'Connel v. Champion Intern. Corp.*, 812 F. 2d 393, 395 (8th Cir. 1987)    26

*Procup v. Strickland*, 792 F. 2d 1069, 1072 (11th Cir. 1986) (en banc)    27

*Ruderer v. United States*, 462 F. 2d 897, 899 (8th Cir. 1972)    11

*Zatko v. California*, 502 U.S. 16 (1991)    19

## JURISDICTIONAL STATEMENT

For the reasons set forth below, this Court has jurisdiction over this appeal.

### Basis for District Court's Jurisdiction.

The District Court had jurisdiction over the underlying dispute, pursuant to 28 USC § 1331.

### Basis for Court of Appeals' Jurisdiction.

This Court has jurisdiction to hear this appeal. See 28 USC § 1291.

### Timeliness of appeal

This appeal was filed less than thirty days after the order set forth below was entered.

### Finality of judgment

This appeal is being brought of a final judgment.

## STATEMENT OF ISSUES

1. Does Appellant have the First Amendment right to file good faith lawsuits, even if they ultimately fail?

2. Does Appellant have a history of "vexatious and abusive" litigation practices?

3. If he does, do the severity of his practices warrant such severe sanctions?

4. Does Appellant have the right to control, and receive compensation for, the use of his name and physical likeness?

5. Do federal courts have subject-matter jurisdiction over intellectual property claims?

# STATEMENT OF THE CASE

1. The Magistrate James R. Marchewski, in an attempt to rid himself of a minor annoyance, entered a Report & Recommendation suggesting that Plaintiff be barred from filing any more lawsuits in the U.S. District Court for the Western District of Arkansas, simply on the grounds of how many lawsuits he has already filed. He even admitted that a few of those lawsuits had passed the Court's *sua sponte* scrutiny under 28 USC § 1915.

2. Appellant quickly filed an objection to the Report & Recommendation, arguing, among other things, the following:

   (a) The quantity of lawsuits, by itself, does not automatically amount to abuse of the legal system.

   (b) The individual merit, and good faith behind the filing of, each lawsuit must be taken into account.

   (c) Simply because a claim fails does not mean that it is frivolous or that it was filed in bad faith.

   (d) Appellant has the right to access the courts.

3. The District Court judge P.K. Holmes subsequently entered an order adopting the Magistrate Judge's Report & Recommendation in its entirety, finding, among other things, the following:

   (a) The good faith behind Appellant's filings were legally irrelevant.

   (b) Appellant has filed "ultimately meritless" claims.

   (c) The mere fact that Appellant has filed claims that have failed is enough to warrant restrictions on future court access.

   (d) Appellant had living expenses of $457.58.

4. Judge Holmes then proceeded to order that Appellant not be allowed to file any more *pro se* lawsuits except once every three months and only if he posts a $100 refundable bond.

5. Judge Holmes also dismissed this lawsuit on the merits, making the following findings:

   (a) First, the Court does not agree that Mr. Stebbins has a cognizable claim for "identity theft" based on his biological parents claiming him on their tax return.

   (b) "Second, Mr. Stebbins does not cite to any statute or precedent for the propositions that mere use of a federal tax form can (a) give rise to a private civil cause of action against someone who improperly claims a tax credit and/or (b) can confer a federal court with jurisdiction."

   (c) "The fact that a person may claim a dependent on their federal tax return does not make them indebted to the claimed dependent for the claimed dependent's calculation of 51% of the dependent's living expenses for that tax year."

6. This timely appeal ensued.

# SUMMARY OF ARGUMENT

1. The District Court believes that future restrictions on Appellant's fundamental right of access to the courts is warranted simply because Appellant has filed "ultimately meritless claims."

2. However, that's not how it works; without bad faith, Appellant's lawsuits are protected by the First Amendment. Therefore, under the strict scrutiny standard, restrictions on future court access should only be imposed after Appellant receives full due process.

3. If Appellant is denied court access, he effectively loses the protection of the law altogether, except in cases where the U.S. Attorney, in his unreviewable discretion, chooses to press charges. There are no rights if Appellant has no means of enforcing them.

4. Besides, Appellant's lawsuits were filed out of a good faith belief that he had been wronged, not out of an attempt to harass or extort money.

   (a) For starters, Appellant sues for violations of the Americans with Disabilities Act so that he can have a job, have a place to live, and learn a skill so that he can become a productive member of society.

   (b) Appellant always tries to seek the advice of counsel before filing suit, even if he represents himself in the proceedings to save on costs. He will not file suit if an attorney adequately communicates to him the error of his logic. This practice, in and of itself, necessarily refutes any presumption that Appellant is an "abusive" filer.

   (c) Appellant does not simply sue for fun, but will only sue for justice, and even then, only if other, less drastic means have proven ineffective. The testimony of a disinterested witness proves this.

5. If Appellant is denied access to the courts, he is effectively denied the protection of the law, something that must be prevented at all costs.

6. The District Court is attempting to justify its restrictions on precedents whose cases are far worse than anything Appellant has even arguably done. The fact that there is such

dissent among the Supreme Court about the propriety of these prospective restrictions just goes to show that the situations contained in those cases should be the bare minimum standard before sanctions become appropriate.

7. The sanctions actually imposed against Appellant are based upon a completely idiotic belief that Appellant does not need to eat food in order to survive … that he can apparently survive just on sunlight, like some sort of weird plant-man.

8. For the District Court to allow an exception to these restrictions if Appellant is represented by counsel is also a violation of Appellant's rights. Furthermore, the fact that it places *this* exception is the only one given – as opposed to … if the District Court were to also allow unrestricted access on the grounds if Appellant paid a filing fee – just goes to show that it has a lot less to do with the District Court's concern about abuse of its resources, and a lot more to do with the District Court sharing Boone County's bias against Appellant for his lawsuit practices.

9. The Complaint should not have been dismissed – let alone with prejudice – without Plaintiff getting an opportunity to amend his Complaint and clarify his positions.

10. Since Appellant is *pro se*, the Court should have viewed his complaint liberally, and made reasonable inferences thereof. The correct cause of action was indeed misappropriation, not identity theft.

11. Appellant undeniably has the right to control – and obtain reasonable compensation for – the use of his name and physical likeness.

12. The federal courts have subject-matter jurisdiction over this case by reason of it being an intellectual property dispute.

# ARGUMENT

For all of the foregoing reasons, the decision of the District Court to impose restrictions on Plaintiff's future court access should be reversed.

**A large number of lawsuits is alone insufficient for a finding of abuse.**

1. The Magistrate Judge found – and the District Court adopted – that Appellant was a vexatious and abusive litigant simply because he has filed a large *number* of lawsuits. Judge Holmes further specified that Appellant was an abusive filer simply because he has filed "ultimately meritless" claims.

2. It does not get any simpler than this: A person's "affinity for litigation, standing alone, would not provide a sufficient reason for issuing such an injunction." See *Ruderer v. United States*, 462 F. 2d 897, 899 (8th Cir. 1972).

3. Therefore, just for this reason alone, the District Court's order should be reversed. The District Court should be admonished to only impose restrictions on a person's court access upon a finding that the lawsuits were specifically frivolous, not merely erroneous. The difference between the two concepts was set forth in *Neitzke v. Williams*, 490 US 319 (1989).

   "[I]t is evident that the failure-to-state-a-claim standard of Rule 12(b)(6) and the frivolousness standard of § 1915(d) were devised to serve distinctive goals, and that while the overlap between these two standards is considerable, it does not follow that a complaint which falls afoul of the former standard will invariably fall afoul of the latter." See *id* at 326.

   **Without bad faith, Appellant's lawsuits
   are protected by the First Amendment.**

4. The District Court acknowledged that Appellant's lawsuits were probably filed in good faith, but decided to restrict his court access anyway, simply because he has filed what the District Court considers to be "ultimately meritless claims," and felt that this was

alone sufficient to warrant imposing restrictions on his future court access.

5.  Appellant is astonished that the District Court would actually consider this to be legally relevant.

6.  Plaintiff has the right – both under the Due Process Clause, as well as the First Amendment – to access to the courts.  See *Bill Johnson's Rests., Inc. v. NLRB*, 461 U.S. 731, 741 (1983) ("[T]he right of access to the courts is an aspect of the First Amendment right to petition the Government for redress of grievances."); see also *California Motor Transp. Co. v. Trucking Unlimited*, 404 U.S. 508, 510 (1972) ("The right of access to the courts is indeed but one aspect of the right of petition."); see also *Monsky v. Moraghan*, 127 F.3d 243, 246 (2d Cir.1997) ("It is well established that all persons enjoy a constitutional right of access to the courts.").

7.  The Supreme Court has declined to extend this First Amendment protection to *baseless* litigation (see *McDonald v. Smith,* 472 U.S. 479, 484 (1985)); however, this precedent, on its face, only applies to litigation filed specifically in bad faith or in reckless disregard to the lack of merit. Courts must remain "sensitive to the need for the courts to remain open to all who seek in good faith to invoke the protect-ion of law. A[ court filing] that lacks merit is not always — or often — frivolous."  See Crain v. CIR, 737 F. 2d 1417, 1418 (5th Cir. 1984). Sanctions and restrictions should only be imposed in response to a filing "designed ***only*** to delay, obstruct, or incapacitate the operations of the courts or any other governmental authority."  See *id*.  An important key-word there is "only," which was bolded, underlined, and italicized for emphasis; if a litigant truly feels that he has been wrong, he should be free to be free to petition the judiciary for a review of his situation without fear of persecution by governmental authorities.

8. Forget the Fifth Circuit; even the *Supreme* Court has made a clear distinction on this is-sue, in the case of *Neitzke v. Williams*, 490 US 319, 326 (1989), which was discussed earlier in this briefing.

9. Since this case was published, Congress has passed an amendment to 28 USC § 1915 that allows District Courts to dismiss an action before service of process simply for failure to state a claim under Rule 12(b)(6). However, this Act of Congress, on its face, only app-lies to pre-service dismissal of just the one case in question. But when you're dealing with the imposition of restrictions on future court access, the distinction set forth above still applies full force.

10. Therefore, where the District Court flatly admits that Appellant's lawsuits were filed in good faith[1], but decides to impose sanctions anyway, then the District Court has heavily infringed upon Appellant's most fundamental and basic constitutional rights, a violation which is completely and utterly inexcusable and should be reversed with gusto.

**Strict Scrutiny forbids summary imposition of restrictions.**

11. Because Appellant's right of access to the courts is governed by strict scrutiny, that means that the judiciary should only be allowed to *summarily* restrict Appellant's court access is there exists no means of deterring frivolous litigation that are less restrictive on Appell-ant's other fundamental rights.

12. That's how strict scrutiny works: "To satisfy strict scrutiny, the [government] must demonstrate that its [law which restricts a fundamental right] is **narrowly tailored** to achieve a compelling interest." See *Miller v. Johnson*, 115 S.Ct. 2475, 2490 (1995). "Narrowly tailored" means that there cannot be any other means that also intrude upon fundamental rights.

---

[1] A finding which is not being challenged on appeal; in fact, the exact opposite finding of the Magistrate Judge is what is being challenged. Therefore, this Court has no subject-matter jurisdiction to disagree with this finding.

13. Here, the accusation that Appellant has abused the legal system was never submitted to a jury, nor did Appellant have a full opportunity to submit evidence of his own, nor was counsel ever appointed.  In short, it was a *summary* imposition of restrictions.

14. This means that Appellant's rights under the Fifth and Sixth Amendments have been infringed upon, which entitles Appellant to full due process in the face of all accusations made by the government. The District Court's order should therefore be vacated, with instructions to actually *try* appellant for abusing the legal system, complete with appointed counsel, full discovery, and trial by jury of Appellant's peers (which would include cross examination of witnesses).  If convicted, Appellant can be made to compensate the Court – who would be considered the victim of Appellant's crime – for the costs Appellant's abuse has caused it, in the form of restitution.

15. Such a process would suffice to protect the Court from an abuse of its resources, while at the same time minimizing the risk that these restrictions would be imposed upon litigants who actually do not deserve it (as will be discussed below) by taking the ultimate decision of whether or not an abuse has occurred out of the hands of an emotionally-charged and personally-involved judge, and giving it to twelve citizens who equally detest frivolous lawsuit filers (as demonstrated by public outrage to news articles which document frivolous filings), yet who have no personal involvement in the case (which is the main reason why juries are so preferred) and thus are willing to give those who are accused of such their proverbial "day in court."

16. Of course, since the request for full due process is wishful thinking on Appellant's part, even though the Constitution entitles him to it, Appellant will nevertheless proceed with arguing why the District Court's finding of abuse was erroneous.

**All of Appellant's lawsuits were filed in good faith.**

17. Although Appellant's litigation history may be quantitatively massive, it was never intended to be vexatious. They were actually filed in good faith.

18. Appellant's lawsuits were filed in reaction to various parties doing wrong against the Appellant. Appellant was unable to afford representation by attorneys, and many of the cases were not slam dunks, leading Appellant to have only two options: Representing himself, or letting the people get away with what they did to Appellant. The latter was completely out of the question, Appellant quickly decided, because he refuses to be ANYONE'S whipping boy.

19. The *quantity* of lawsuits was not filed out of a vexatious attempt to harass anyone or abuse the legal system. Nor was it caused by Appellant holding an extremely lenient standard of what constitutes a "legal wrong." No, it was caused because Appellant has a unique condition which makes him especially susceptible to torts: His Asperger Syndrome.

20. This Asperger Syndrome makes it extremely difficult for Appellant to converse with others in a sociable manner. In fact, the only reason he can thrive in a legal environment is because it is an extremely esoteric, and also extremely logical, detailed, and precise world.

21. This causes Appellant to often be discriminated by persons, not because they simply do not care (though Jason Jones, one of the Defendants in Case No. 12-3022 in the U.S. District Court for the Western District of Arkansas, clearly is one of the people who don't care), but because they often do not quite understand what Aspergers is, and that Plantiff's supposed "attitude" and "obnoxiousness" cannot often be helped by Appellant.

22. Of course, just because they THINK they are doing good does not mean that their actions are legal. At best, their belief in the legality of their actions can relieve them of punitive damages liability; see *Kolstad v. American Dental Assn.*, 527 US 526 (1999), but it does not excuse them from liability in the first instance.

23. Despite the good faith presumed by a majority of the Defendants in Appellant's actions, Appellant simply cannot allow this conduct to go unchallenged. We are talking about Appellant's fundamental right to PARTICIPATE IN SOCIETY!!!

    (a) Appellant sues so he can hopefully, one day, get off the welfare money and become a self-sustaining man, by means of *having a job*, NOT by means of simply sitting around his home and playing video games all day.

    (b) Appellant sues to protect his right to enter a store and shop, helping the economy through consumption.

    (c) Appellant sues so he can have a place to live (the main reason he sued Harp & Associates)... *while paying rent*.

    (d) Recently, Appellant got finished with a lawsuit against the University of Arkansas. What was his goal in filing that lawsuit? To Harass? To make a quick buck? No, Appellant sued for the right to go to school and LEARN A SKILL, so that he would be better equipped to find employment!

24. In short, Appellant sues, not to harass, but simply so that he can *live his life*!!! Surely, that is worth filing a hundred lawsuits over, isn't it?

25. Appellant's point with all of this is that... while the quantity of lawsuits may be evidence of abuse of the legal system, this evidence is, at best, circumstantial. And the circumstances in Appellant's case show a total lack of *mens rea* when it comes to a desire to

abuse the legal system.

**Appellant sues upon advice of counsel.**

26. The District court has allowed Appellant unlimited court access if he is represented by Counsel. In other words, they will accept that Appellant is filing in good faith – and thus, not vexatious – if an attorney vouches for said good faith.

27. The thing about that is … Appellant *does* consult with legal counsel before filing suit! He represents himself during the lawsuits themselves to save on costs, but he always makes an effort to obtain the endorsement of an attorney for his causes.

28. To support this, please find attached Exhibits A and B. These are email conversations Appellant had with other attorneys (other consultations were either over the phone, or in person, and thus cannot be attached here), where they advised Appellant that the lawsuits he wanted to file were valid and colorable causes of action.

29. By contrast, see Exhibit C, where an attorney advised Appellant that he stood no chance of winning an ADA discrimination lawsuit against a website, for the simple reason that Title III of the Americans with Disabilities Act, on its face, does not apply to websites. Thus, you will notice, of all the lawsuits Appellant has filed that appear on Pacer, not one of them was against a website for an ADA violation, due to the simple fact that Appellant knows, understands, and respects this unfair, but still very real, part of the law.

30. This evidence singlehandedly proves that, although Plaintiff may represent himself during the actual proceedings, he does so under the advice of counsel, which single-handedly refutes the Magistrate Judge's argument that Plaintiff's lawsuits are vexatious and abusive.

**Appellant does not sue when he already has justice.**

31. To offer one final push in Appellant's favor, Appellant hereby attaches, as Exhibit D, an affidavit of one of Appellant's neighbors, a woman who had committed a tort – nay, a *felony* – against Appellant in the past. Appellant not only had a criminal conviction to help prove his case, but also a *confession* on her part, which she freely gave to the police due to her frivolous belief that she was acting in "self-defense." If Appellant had sued her, he would have gotten a crisp $25,000 in punitive damages, slam-dunk. However, he ultimately chose not to sue her. Why? Because she *learned her lesson* from the jail sentence she suffered!

32. This proves that Appellant only sues when other, less drastic remedies prove ineffective. This is not "abusing the legal system." In fact, it is the exact opposite.

33. For all these reasons and more, the District Court's allegation that Appellant is an abuser is without merit, and should be reversed.

**Take away Appellant's right of access to the courts, and you**
**take away his only means of protecting himself.**

34. There is a *reason* that access to the Courts is a fundamental right. Because there exists no other means of peaceful dispute resolution. Without access to the courts, the laws have no effect.

35. Sure, there is criminal court, but that is at someone else's sole discretion. Appellant is not in control of his own destiny when he turns to criminal court. Therefore, it is an inadequate alternative. Besides, this offers virtually no protection when it is the police themselves who have wronged Appellant (such as in Case No. 12-3022 in the Western District of Arkansas).

36. If you take away Appellant's right of access to the courts, you take away his only means

of obtaining justice.  If someone learns of this development (which will not be hard, since it is public record), they may get the idea that they can do whatever they want to Appellant, whenever they want, without consequences.  It goes without saying that there are millions of people in this nation (such as Jason Jones) who only refrain from committing crimes and torts because they do not wish to be punished or held liable for them.  If you take away that one sole disincentive, you effectively subject Appellant to mob justice.

**Precedent used by the District Court
is far more severe than anything
Appellant has even arguably done.**

37. In support of their claims, the Magistrate Judge used the precedents of *Zatko v. California*, 502 U.S. 16 (1991), *in re McDonald*, 489 U.S. 180 (1989), . *Martin v. District of Columbia Court of Appeals*, 506 U.S. 1, 2 (1992), and *Day v. Day*, 510 U.S. 1 (1993), while Judge P.K. Holmes invoked the precedent of *In re Tyler*, 839 F.2d 1290 (8th Cir. 1988).

38. However, to invoke these precedents as justification for issuing restrictions on Appellant's future court access is like using a steamroller to flatten bread dough.  All of these cases invoked document actions and abuses far more severe than anything you could even pretend is present with Appellant.

39. For example, several notable differences between this case and the case of *Zatko v. California* are as follows:

(a)  …

    i.  In the Zatko case, "34 of those filings have come within the last 2 years."

    ii.  In this case, Appellant has not even filed 34 – or even *twenty*-four – different cases in his entire life.

(b) …

    i. In the Zatko case, "Future similar filings from these petitioners will merit additional measures."

    ii. In this case, the measures are being taken automatically and prospectively.

(c) …

    i. In the Zatko case, "As the dissent recognizes, for example, well over half of the numerous *in forma pauperis* petitions filed since the beginning of this Term are best characterized as frivolous."

    ii. In this case, the District Court acknowledges that many of Appell-ant's filings were done in good faith, but feels that they are entitled to impose restrictions, simply because the filings met their definition of "ultimately meritless."

40. Several notable differences between this case and the case of *in re McDonald* are as follows:

(a) …

    i. In McDonald, "[Petitioner] has made 73 separate filings with the Court."

    ii. In this case, Appellant has not made even a third that number of filings,

(b) …

    i. In McDonal, "In the 13 years since his conviction became final, petitioner has filed numerous petitions and motions for relief in this Court and in the Tennessee courts, all of which have been rejected."

    ii. Here, Appellant has not filed more than one case per defendant per cause of action.

(c) …

i. In McDonald, "Petitioner remains free under the present order to file in forma pauperis requests for relief other than an extraordinary writ, if he qualifies under this Court's Rule 46 and does not similarly abuse that privilege."

ii. Here, the District court seeks to bar Appellant's ability to file even regular lawsuits.

41. A few notable differences between this case and the case of *Martin v. District of Columbia Court of Appeals* are as follows:

(a) …

i. In Martin, "[he has] repeatedly made totally frivolous demands on the Court's limited resources."

ii. Here, the District Court acknowledges that Appellant's filings were made in good faith.

(b) …

i. "Martin's refusal to heed our earlier warning leaves us no choice."

ii. Here, Appellant was never given any prior warning from the Court to correct his behavior. The Magistrate Judge's Report & Recommendation was slapped on Appellant without any warning.

42. A few notable differences between this case and the case of *Day v. Day* are as follows:

(a) …

i. In Day, "… all of them demonstrably frivolous."

ii. Here, the District Court acknowledges that Appellant's filings were made in good faith.

(b) …

i. "Day's refusal to heed our earlier warning requires us to take this step."

ii. Appellant was never given any prior warning from the Court to correct his behavior.  The Magistrate Judge's Report & Recommendation was slapped on Appellant without any warning.

43. And finally, the case of *In re Tyler* has the most, and the most glaring, differences of all.

(a) …

i. In Tyler, "He has engaged in practices which have been abusive to this court and its personnel…" and "Mr. Tyler has … used foul and disgusting language, calling court staff, including deputy and assistant clerks, law clerks, secretaries, magistrates, and judges, racially derogatory names, hurled epithets, and otherwise utilized abusive language disrespectful of the court and all in his presence."

ii. Here, the closest you could argue that Appellant has come to abusing court personnel is when he asked what is there to stop a judge from simply never ruling on a motion, and instead of giving a straight answer, the law clerk simply dodged the question.  Appellant then become rightfully frustrated at his inability to get a straight answer and spoke with only 10% greater volume "What is there to STOP them?!" This happened only one time (as opposed to Tyler's case, where the Court uses the plural word "practices," implying a pattern), and Appellant actually had a reason for being so frustrated.

(b) …

i. In Tyler, the Petitioner "has caused unnecessary administrative expenses in the handling of his cases."

ii. The District Court has not even alleged – let alone shown evidence for – any act

on Appellant's part which has burdened specifically the *administration* of the Court.  In fact, most of the Clerks of the District Court seem to LIKE Appellant.

(c)  …

    i.  In Tyler, "Since January 1, 1986 (slightly more than two years before the date of that case's opinion), Mr. Tyler has filed 113 cases in this court in his own name as petitioner or plaintiff."

    ii.  To say that Appellant has come even remotely close to filing this many lawsuits in that length of time is nothing short of laughable.

(d)  …

    i.  In Tyler, "the court further notes that in many cases Mr. Tyler has sought to appeal orders of the magistrate to the Eighth Circuit Court of Appeals, which is clearly not permitted; sought to appeal interlocutory orders of the trial judges to the Eighth Circuit Court of Appeals; and otherwise attempted to appeal nearly every disposition of his cases to the Eighth Circuit Court of Appeals."

    ii.  Here, while Appellant may have indeed sought appellate review before such review was ripe, he has rarely made the same mistake twice, contrasted with Tyler's case, where this court used the exact words "many cases" to describe the situation.

(e)  …

    i.  "Mr. Tyler has on several occasions named parties as defendants … including Lil' Red Riding Hood."

    ii.  Appellant, at the very least, files suits against real people!

(f)  …

  i. "No attempt has been made in many of his complaints to make any specific allegations."

  ii. Appellant always tries to explain how every Defendant played a role in what Appellant considered to be a violation of his rights.

(g) …

  i. Tyler was restricted to filing one lawsuit each month.

  ii. Appellant has been given three times as severe a restriction for what amounts to a fraction of the severity of the offense.

44. In addition to this, you will notice that every case cited which comes from the Supreme Court have dissenting opinions. Not one of the cited SCOTUS precedents were issued by a unanimous court. This means that the conditions which caused those those restrictions should be construed as the bare minimum level of abuse before prospective restrictions become even arguably appropriate.

45. The one precedent cited by the District Court that was unanimous was done in reaction to a pattern of abuse far exceeding anything you could even remotely claim Appellant is guilty of. To say that *in re Tyler* gives the Court authority to restrict Appellant's future court access in this case is like using the case of *Korematsu v. United States*, 323 U.S. 214 (1944) to justify a school board lining up the whole school at gunpoint and performing involuntary full body cavity searches on all the children just to find ¼ ounces of cannabis. Billy Roy Tyler got those restrictions because he clearly was abusing the legal system, whereas Appellant got his restrictions because the District Court made the finding that Appellant has filed "ultimately meritless claims." It's ludicrous, and it's insulting to Appellant's intelligence.

**Even if restrictions are appropriate, the restrictions
given are far too harsh and have the disparate
impact of depriving Appellant of court access altogether.**

46. Judge Holmes structured his restrictions on Appellant's future court access with an intention of allowing court access that is within his budget. However, his belief as to what was "within Plaintiff's budget" is entirely mistaken.

47. Judge Holmes believes that Appellant's living expenses are only $457 per month. To reach this total, he counts only Appellant's rent and utilities, and absolutely nothing else. No food, no clothes, no nothing.

48. Appellant's food stamps only cover a portion of his food costs; Appellant's groceries tend to cost upwards of $150 per month. This means that the food alone takes up nearly every spare cent that Appellant does not spend on rent and utilities.

49. Food costs also do not cover clothing, stationary, or even cooking utensils or cleaning supplies.

50. So, as you can see, Appellant has a lot more living expenses than just $457 per month. Any sanctions against Appellant's future court access should be restructured so as to be within Appellant's budget[2].

51. Even the case of *in re Tyler*, which the District Court seems to love so much, acknowledges this truth on Page 1296 of that opinion:

"Mr. Tyler has no money. The records of this court contain documentation submitted by both Mr. Tyler and the appropriate official from the Nebraska State Penitentiary, disclosing that his prison trust account is for all practical purposes non-existent as a source of funds for him to pay any fee for filing cases in this court or elsewhere. Thus, it can be concluded that if he were to be prohibited from proceeding *in forma pauperis* in any case, his access to this court would be totally denied. In accordance with *Green v. White*, we reject this alternative as too strict a sanction to impose upon Mr. Tyler at this time."

---

[2]  Appellant has filed a motion to amend judgment, suggesting that this restructured restriction be that the Appellant must seek consultation with legal counsel before filing suit, and must provide evidence thereof at the time of filing. However, Appellant has not yet heard back from the District court on this motion.

52. Therefore, even if all of the above arguments ultimately prove unpersuasive to this court, the monetary restriction should still be restructured.

### The District Court is effectively demanding
### that Appellant be perfect from now on.

53. The sanctions are unreasonably restrictive as it is. However, recent actions from the District Court demonstrate an intent to deny Appellant court access far beyond what the Order, on its face, purports.

54. The District Court demands a $100 bond every time Appellant files a new lawsuit. This bond is supposed to be refundable, but only if Appellant (A) passes *in forma pauperis* scrutiny, and (B) goes the entire case – the ENTIRE CASE – without filing a single pleading that is not in violation of Rule 11.

55. The idea that Appellant cannot file in violation of Rule 11, on its face, seems legitimate and reasonable. However, keep in mind that the District Court has discretion to decide whether or not one of Appellant's filings has violated the Rule. "[W]hether a violation [of Rule 11] has occurred is a matter for the court to determine, and this determination involves matters of judgment and degree." See *O'Connel v. Champion Intern. Corp.*, 812 F. 2d 393, 395 (8th Cir. 1987).

56. This all seems fine and good … except for one problem: Recently, the District Court has adopted a policy that Appellant is necessarily frivolous, just by nature of him disagreeing with the District Court.

57. For example, in Case No. 13-3068 in the District Court, the Magistrate Judge is, as of the time of this writing, recommending to Judge Holmes that Appellant's application for leave to appeal *in forma pauperis* should be denied under 28 USC § 1915(a)(3) simply because the District Court has already ruled against Appellant in the matter. See

Document #14 in that case. In other words, simply by nature of Appellant disagreeing

with the District Court, the appeal is automatically filed in violation of 28 USC § 1915(a)

(3). Frankly, Appellant always assumed that the whole point of filing an appeal in the

first place was because the appeal-filer disagreed with the District Court.

58. Therefore, in light of events such as these, it has become clear that, even if Appellant

bites the bullet and pays the $100 "refundable" fee, the Judges will look for whatever

excuse they can to not actually refund said "refundable" fee … like a rebate offered by a

stereotypically sleazy used car salesman.

59. For this reason alone, since it is clear that the Judges who implemented this restriction

cannot be trusted with the discretion needed to properly enforce it, the restrictions should

be lifted.

**To discriminate on the basis of *pro se* status is not allowed.**

60. The District Court has allowed Appellant unrestricted court access in the event that he is

represented by an attorney.

61. This, however, is just as much an infringement on Appellant's rights as depriving him of

court access altogether. "In all courts of the United States, the parties may plead and

conduct their own cases personally or by counsel as, by the rules of such courts,

respectively, are permitted to manage and conduct causes therein." See 28 USC § 1654.

62. See also *Procup v. Strickland*, 792 F. 2d 1069, 1072 (11th Cir. 1986) (en banc):

"In this Court's judgment, however, the requirement that Procup file suits only
through an attorney may well foreclose him from filing any suits at all. A private
attorney, knowing Procup's track record, might well be unwilling to devote the
time and effort necessary to sift through Procup's generally frivolous claims to see
if there is one of sufficient merit to undertake legal representation. A legitimate
claim could well go undiscovered. Moreover, due to Procup's shotgun litigation
techniques, attorneys in the legal services office already have found themselves as
defendants in Procup's rambling pleadings. This not only would deter an attorney

from representing such a difficult client, but also raises the possibility that, due to intra-office conflicts of interest, the legal services attorneys would be unavailable to represent Procup. With the premise that Procup would simply be unable to get any attorney to represent him, the injunction then effectively enjoins Procup from filing any suit. The district court neither intended this result nor indicated in any way that such an absolute injunction would be appropriate. An absolute bar against a prisoner filing any suit in federal court would be patently unconstitutional. We, therefore, vacate the injunction and remand for consideration of such modification as will, as much as possible, achieve the desired purposes without encroaching on Procup's constitutional right to court access."

63. In citing this precedent, Appellant does not admit to filing generally frivolous claims; this argument is merely being presented under the assumption that he has.

64. The fact that the District Court issued this one exception to Appellant's restriction on his right to file lawsuits (as opposed to defend them) just goes to show that Judges Holmes & Marchewski share Boone County's animus against Appellant, and simply want him to stop filing *pro se* lawsuits, not simply abusive ones. After all, if the District Court wanted Appellant to have a financial incentive to not file frivolous lawsuits, why didn't they demand that Appellant be given unlimited court access if he simply pays the filing fee? Wouldn't *that* provide an incentive to not file frivolous suits? Sure, we would still be left with the issue of it depriving Appellant of court access altogether, but at least it would not demonstrate a clear animus against *pro se* litigants.

**The District Court should not have dismissed the action
with prejudice, as Plaintiff stated a valid cause of action.**

65. Turning to the merits of the instant case, the District Court dismissed Plaintiff's action with prejudice, as patently frivolous, on the following grounds:

(a) First, the Court does not agree that Mr. Stebbins has a cognizable claim for "identity theft" based on his biological parents claiming him on their tax return.

(b) "Second, Mr. Stebbins does not cite to any statute or precedent for the propositions

that mere use of a federal tax form can (a) give rise to a private civil cause of action against someone who improperly claims a tax credit and/or (b) can confer a federal court with jurisdiction."

(c) "The fact that a person may claim a dependent on their federal tax return does not make them indebted to the claimed dependent for the claimed dependent's calculation of 51% of the dependent's living expenses for that tax year."

66. "We review de novo a district court's grant of a motion to dismiss for failure to state a claim under Rule 12(b)(6). A complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. A complaint must be viewed in the light most favorable to the plaintiff and should not be dismissed merely because the court doubts that a plaintiff will be able to prove all of the necessary factual allegations." See Iowa Network Services, Inc. v. Qwest Corp., 363 F. 3d 683, 694 (8th Cir. 2004).

67. The grounds for dismissal restated in Paragraph #65(a) are frivolous. Just because Plaintiff *called* it something different does not mean that the Court should have dismissed it. Under *Haines v. Kerner*, 404 U.S. 519 (1972), *pro se* pleadings are to be held to less stringent standards than those drafted by attorneys. Admittedly, Appellant, in hindsight, realizes that the common law tort of misappropriation[3] was closer to what Appellant had in mind; just because Appellant called it something different does not mean it should have been dismissed without giving the *pro se* filer the benefit of the doubt.

68. In the grounds restated in Paragraph #65(c), the District Court frivolously claims that Appellant does not have the right to compensation in this case. This is ludicrous.

---

[3] According to Appellant's research, it appears as if misappropriation is the usage of a person's name and/or physical likeness (including his social security number) without that person's knowledge or consent. Furthermore, it is Appellant's understanding that doing so for a direct financial benefit is an aggravating factor in the tort.

Appellant has the right to dictate the use of his name and physical likeness and charge a reasonable royalty accordingly. When Appellant demanded compensatory damages equal to 51% of his living expenses for every year where this violation of his IP rights occurred, that was merely a calculation on Plaintiff's part as to what a "reasonable" royalty would be.

69. Finally, the issue of jurisdiction, as addressed in Paragraph #65(b). Simply because Plaintiff did not *state* a statute which bestows jurisdiction onto the federal courts does not mean that the Courts do not have jurisdiction. Again, under the precedent of *Haines v. Kerner*, the Courts should do their own search for jurisdiction.

70. Since this is a case of misappropriation, that puts it squarely within the realm of intellectual property laws, which axiomatically puts the case within the federal courts' subject-matter jurisdiction. In fact, the federal judiciary's jurisdiction over intellectual property disputes is so well established that Appellant does not even need to cite any claims for it.

71. Furthermore, since this misappropriation required the use of Appellant's social security number – a portion of Appellant's physical likeness which was created by the federal government, exclusively for use when dealing with the federal government – that should be sufficient to give the federal courts jurisdiction over the dispute.

72. On a side note, since this is a case of intellectual property, that means that, once this case is decided on the merits, the appeal taken thereof would then be heard, not by this Court, but by the U.S. Court of Appeals for the *Federal* Circuit.

**Conclusion**

73. To bring this argument to a close, let's recap the points:

(a) The District Court believes that future restrictions on Appellant's fundamental right of access to the courts is warranted simply because Appellant has filed "ultimately meritless claims."

(b) However, that's not how it works; without bad faith, Appellant's lawsuits are protected by the First Amendment. Therefore, under the strict scrutiny standard, restrictions on future court access should only be imposed after Appellant receives full due process.

(c) If Appellant is denied court access, he effectively loses the protection of the law altogether, except in cases where the U.S. Attorney, in his unreviewable discretion, chooses to press charges. There are no rights if Appellant has no means of enforcing them.

(d) Besides, Appellant's lawsuits were filed out of a good faith belief that he had been wronged, not out of an attempt to harass or extort money.

    i. For starters, Appellant sues for violations of the Americans with Disabilities Act so that he can have a job, have a place to live, and learn a skill so that he can become a productive member of society.

    ii. Appellant always tries to seek the advice of counsel before filing suit, even if he represents himself in the proceedings to save on costs. He will not file suit if an attorney adequately communicates to him the error of his logic. This practice, in and of itself, necessarily refutes any presumption that Appellant is an "abusive" filer.

    iii. Appellant does not simply sue for fun, but will only sue for justice, and even then, only if other, less drastic means have proven ineffective. The testimony of a disinterested witness proves this.

(e) If Appellant is denied access to the courts, he is effectively denied the protection of the law, something that must be prevented at all costs.

(f) The District Court is attempting to justify its restrictions on precedents whose cases are far worse than anything Appellant has even arguably done. The fact that there is

such dissent among the Supreme Court about the propriety of these prospective restrictions just goes to show that the situations contained in those cases should be the bare minimum standard before sanctions become appropriate.

(g) The sanctions actually imposed against Appellant are based upon a completely idiotic belief that Appellant does not need to eat food in order to survive … that he can apparently survive just on sunlight, like some sort of weird plant-man.

(h) For the District Court to allow an exception to these restrictions if Appellant is represented by counsel is also a violation of Appellant's rights.  Furthermore, the fact that *this* exception is the only one given – as opposed to, if the District Court were to also allow unrestricted access on the grounds if Appellant paid a filing fee – just goes to show that it has a lot less to do with the District Court's concern about abuse of its resources, and a lot more to do with the District Court sharing Boone County's bias against Appellant for his lawsuit practices.

(i) Since Appellant is *pro se*, the Court should have viewed his complaint liberally, and made reasonable inferences thereof. The correct cause of action was indeed misappropration, not identity theft.

(j) Appellant undeniably has the right to control – and obtain reasonable compensation for – the use of his name and physical likeness.  The District Court's finding of otherwise is asinine.

(k) The federal courts have subject-matter jurisdiction over this case by reason of it being an intellectual property dispute.

# STANDARD OF REVIEW

1. The Magistrate Judge's belief that a large of quantity of lawsuits filed negates the need to screen each one for frivolousness is reviewable de novo.

2. The District Court's finding that Appellant is an abuser of the legal system is reviewable for clear error.

3. The District Court's finding that Appellant has living expenses of $457 per month is reviewable for clear error.

4. The District Court's decision to impose restrictions on Appellant's future court access is reviewable for abuse of discretion.

5. The District Court's decision to restrict Appellant to only filing one new lawsuit every three months is reviewable for abuse of discretion.

6. The District Court's finding that Appellant does not have the right to represent himself in proceedings is reviewable de novo.

7. The District Court's finding that Appellant does not have the right to control and receive compensation for the use of his name and physical likeness is reviewable *de novo*.

8. The District Court's finding that it does not have subject-matter jurisdiction over intellectual property disputes is reviewable *de novo*.

## CONCLUSION

Wherefore, premises considered, Appellant requests that the District Court's order imposing restrictions on Appellant's future court access be vacated, and that the District Court's order dismissing the action on the merits, as well as for lack of jurisdiction over intellectual property disputes, be reversed. So requested this 10th day of October, 2013.

  /s/ David Stebbins
David Stebbins
123 W. Ridge St.,
APT D
Harrison, AR 72601
870-204-6516
stebbinsd@yahoo.com
